UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ASHLY C. BOUDREAUX, INDIVIDUALLY, | * | CIVIL ACTION No : 13-4762 |
| AND ON BEHALF OF  JACK D. BOUDREAUX | * | |
| AND GRACE E. BOUDREAUX | * | SECTION: |
| | * | |
| Complainant | * | JUDGE : |
| | * | |
| | * | MAGISTRATE: |
| VS. | * | |
| | * | |
| SHELL OIL COMPANY, SHELL CHEMICAL LP | * | |
| D/B/A SHELL CHEMICAL COMPANY, | * | |
| FORMOSA PLASTICS, RUBICON LLC, | * | |
| CF INDUSTRIES, EXXON MOBIL | * | |
| CORPORATION, and THE DOW CHEMICAL | * | |
| COMPANY | * | |
| | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**Original Complaint**

The Complainant, Ashly C. Boudreaux, et al, through their undersigned counsel, file this Complaint alleging wrongful death and survival actions based on the injuries suffered by  and death of her husband Kevin Boudreaux as follows:

**Parties**

1.

A.   *The Complainants* are:

   i.   **Ashly C. Boudreaux**, a major residing at 39226 David Drive, Prairieville, Louisiana 70769, individually as the wife and as the legal representative of Kevin A. Boudreaux. (deceased). **A copy the Certificate of Marriage between Kevin A Boudreaux and Ashley C. Boudreaux is attached as Exhibit A**;

   ii.   **Jack D. Boudreaux**, a minor son of Kevin A. Boudreaux residing at 39226

David Drive, Prairieville, Louisiana 70769, who is represented by Ashley C. Boudreaux.

iii. **Grace E. Boudreaux**, a minor daughter of Kevin A. Boudreaux residing at 39226 David Drive, Prairieville, Louisiana 70769, who is represented by Ashley C. Boudreaux.

B. The following parties are made **defendants** in *solido*:

i. **Shell Oil Company** ("Shell Oil"), incorporated in Delaware with its principal office in Texas;

ii. **Shell Chemical LP** d/b/a Shell Chemical Company ("Shell Chemical"), incorporated in Delaware with its principal office in Texas;

iii. **Formosa Plastics Corporation**, Louisiana("Formosa"), incorporated in Delaware with its principal place of business in New Jersey;

iv. **Rubicon, LLC** ("Rubicon") in corporate in Utah with its principal place of business in Utah;

v. **CF Industries**, Inc. ("CF Industries"), incorporated in Delaware with its principal place of business in Illinois;

vi. **Exxon Mobil Corporation** ("Exxon"), incorporated in New Jersey with its principal place of business in Texas;

vii. **The Dow Chemical Company** ("Dow"), incorporated in Delaware with its principal place of business in Michigan.

## Jurisdiction and Venue

2.

This Honorable Court has jurisdiction pursuant to 28 U.S.C. § 1332 because there is

complete diversity of citizenship among all the parties and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

3.

This Court has personal jurisdiction over the solidary defendants who are doing business in the Eastern District or who did business in this district at a relevant time.

4.

The defendants are incorporated under the laws of Delaware, Ohio, New Jersey, North Carolina, and California respectively, with their principal places of business in Texas, Illinois, North Carolina and California.

5.

Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 (b)-(c) and 1400(b) because the Defendants are doing business in this District and because the events giving rise to the plaintiffs' causes of actions arose in this District.

**Background**

6.

Kevin A. Boudreaux ("Mr. Boudreaux") performed services as a instrument technician and maintenance worker performing new construction and turnarounds for various construction and service companies from January 1985 through 2003.

7.

From 1985 through 2003, he would regularly use or come into contact with benzene or benzene-containing products (including but not limited to crude oil, gasoline, other chemicals) at the defendants' facilities (Shell Oil, Shell Chemical, Formosa, Rubicon, CF Industries, Exxon, and Dow). On May 14, 2010, Mr. Boudreaux died of acute myeloid leukemia ("AML leukemia")

due to his exposure to benzene and benzene-containing products.

8.

At all material times herein, defendants were manufacturers, distributors, sellers, suppliers, or large industrial consumers of benzene or benzene-containing products.

9.

While working as a instrument technician, maintenance person, and plumber from 1985 through 2003 Mr. Boudreaux was exposed daily to high levels of benzene when he repaired or replaced equipment, tied in new equipment while performing turnarounds, and worked on new construction jobs at the defendants' facilities. He was also exposed to high levels of benzene from products manufactured, distributed or sold by the defendants.

10.

Mr. Boudreaux sustained tissue damage shortly after each exposure to benzene, resulting in distinct bodily injuries in each year from 1985 through 2003.

11.

The health hazards of benzene have been recognized for over one hundred years. Benzene has been recognized as a carcinogen known to cause leukemia. By the end of 1948, it was widely known to those in defendants' industry in the United States, as well as the named defendants or their predecessors, that exposure to benzene could cause a myriad of ill health effects including such diseases as leukemia, multiple myeloma, lymphoma and other blood disorders.

12.

Through industry and medical studies unknown to plaintiffs, the defendants knew or should have known of the health hazards inherent in the products they manufactured, distributed,

sold, supplied, owned, transported, or used. The actions or inactions of the defendants constitute gross negligence and demonstrate a reckless disregard for the rights and safety of others. Furthermore, the defendants committed numerous tortious acts that include, without limitation, negligently misrepresenting, concealing, suppressing, and omitting material information about the health effects of benzene and precautionary measures in regard thereto, as specifically alleged below.

13.

As a direct and proximate result of exposure to benzene and products containing high levels of benzene, Mr. Boudreaux suffered injury including, but not limited to, AML leukemia; physical damage, severe physical and mental pain, fear of further disease processes, disability, medical expenses, and loss of enjoyment of life.

14.

The causal connection between Mr. Boudreaux's injuries and benzene has been scientifically documented since 1948.

15.

The development of AML leukemia as a result of chronic benzene exposure has been well documented through industry literature.

16.

AML leukemia is a malignant disease that affects the blood and bone marrow.

17.

Scientists have also linked myelodysplastic syndrome (MDS), aplastic anemia, pancytopenia, cytopenias, myelofibrosis, and polycythemia vera to benzene exposure.

18.

The adverse impact of exposure to levels of benzene has been known to range from less than five years to in excess of thirty years.

19.

Practically all of the adverse chronic effects of exposure to benzene and its oxidation products are a result of their influence on the blood forming system.

20.

Exposure to benzene is usually through inhalation, although skin contact may occur. Chronic benzene poisoning results from repeated or continuous exposure to relatively low concentrations of benzene vapors.

21.

Long-term benzene exposure may also adversely impact marrow and bone production. Breathing benzene can cause drowsiness, dizziness, rapid heart rate, headaches, tremors, confusion, and unconsciousness. Breathing very high levels of benzene can also result in death. Eating or drinking foods containing high levels of benzene can cause vomiting, irritation of the stomach, dizziness, sleepiness, convulsions, rapid heart rate, and death.

22.

In the September 1948 edition of the American Petroleum Institute, Toxicological Review, the authors recommended precautionary measures for workers who are exposed to benzene. Furthermore, they stated that benzene use was extensive in the petroleum industry with the greatest amount of benzene blended into motor gasoline. A copy of the article is attached as Exhibit B.

23.

As of 1948, the American Standards Association and most states had set an arbitrary limit of 100 ppm as the maximum permissible benzene concentration for workers exposed to this substance during an 8-hour day. Inasmuch as the body develops no tolerance to benzene, and as there is a wide variation to individual susceptibility, it is generally considered that the only absolute safe concentration for benzene is zero.[1] The concentration of benzene vapor in the air should be checked regularly in situations where excessive exposures are apt to be encountered.[2]

24.

The safety measures necessary for the prevention of benzene poisoning are primarily those designed to prevent the inhalation of benzene vapor. Ventilation should be designed to prevent toxic concentrations of the vapor from reaching the breathing zone of individuals who may potentially be exposed. Individuals who must be exposed to benzene vapor should be rotated to reduce their exposure time to a minimum. When excessive concentrations are unavoidably encountered in operations—such as the cleaning of tank cars, vats, storage tanks—air masks should be employed. Skin contact and possible dermatitis from benzene should be avoided entirely if possible; but, if the hands must contact the solvent, then neoprene gloves or protective creams should be used.

25.

The defendants knew or should have known about the causal relationship between benzene and cancer-related illnesses. The defendants failed to warn Mr. Boudreaux and other similarly situated workers about the health hazards associated with benzene.

---

[1] *Id.*

26.

The defendants are guilty of negligence, gross-negligence, strict liability, and fault identified throughout this complaint more specifically as follows:

**Negligence**

27.

The defendants breached duties, which they owned to Mr. Boudreaux and the complainants to exercise proper care in manufacturing and selling their respective products. More specifically, they breached the following duties:

a) to design their products to contain available and suitable products other than benzene;

b) to sell benzene-free products;

c) to select materials other than benzene for inclusion into their products;

d) to fully test their respective products for health risks associated with the normal and intended use of their products;

e) to fully instruct and warn users and bystanders in the uses of their respective products so as to eliminate or reduce the health hazards associated with their normal and intended use;

f) to fully warn foreseeable users and bystanders as additional medical knowledge became available concerning the health hazards associated with their products;

g) to recall their products upon discovering, or at the time they should have discovered, the health hazards associated with those products;

---

[2] *Id.*

h) to inspect fully and adequately the design, selection, testing, instruction and warnings that should have accompanied the sale of such products;

i) to refrain form negligently misrepresenting the safety and health risks of the products they sold;

j) to inquire about or investigate the safety and health risks of the products they sold;

k) to research, study and be aware of medical and scientific studies concerning the health hazards of benzene; and

l) other acts which may be revealed at the trial of this matter.

28.

As a direct and proximate result of the defendants' negligent breach of their duties, the plaintiffs have sustained injuries, damages and losses. The scope of the duties breached by the defendants encompasses the risk of the injuries sustained by the plaintiffs, the duties breached were intended to protect the plaintiffs from the injuries they have sustained, and the defendants' breaches of their duties constituted the direct legal cause of the injuries to the plaintiffs. The defendants are thus jointly and solidarily liable for all damages caused by their breaches.

**Strict Product Liability**

29.

Exposure to benzene from the defendants' products and/or products under their care, custody and control resulted from the normal foreseeable and intended use of the products, without substantial change in the condition in which the defendants sold or supplied these products.

30.

The defendants' products were defective, presented an unreasonable risk of harm, and

were unreasonably dangerous under normal use at the time the products left the respective defendants' control.

31.

Mr. Boudreaux was an intended and foreseeable user of the alleged defective products and damages and defendants could reasonably have anticipated the losses to the plaintiffs.

32.

The defects in the defendants' products and equipment include, but are not limited to, the following:

a. inherent characteristics (known to the defendants) that gave the products such a potential for causing health problems as to render the products unreasonably dangerous per se;

b. lack of warnings or lack of sufficient warnings of the inherently dangerous properties of the products when used in the fashion in which they were anticipated or should have been anticipated being used;

c. lack of warnings or lack of sufficient instructions for eliminating the health risks inherent in the use of the products;

d. lack of sufficient inspections by the defendants of their products to ensure that such products contained sufficient warnings of the dangerous properties of the products;

e. lack of reasonable inspections by the defendants of their products to ensure that such products contained sufficient instructions for eliminating or minimizing the health risks inherent in the use of the products;

f. lack of tests or lack of sufficient tests to determine the effect of benzene vapors on intended users and bystanders;

g.  defective designs calling for the inclusion of benzene in products that did not require benzene, when alternative, equally suitable substances were available, and

h.  other acts which may be revealed at the trial of this matter.

33.

The defendants sold their products with conscious disregard for the safety of users of the products and other persons who might be injured thereby.

34.

As a result of the defective and unreasonably dangerous condition and composition of the benzene-containing products manufactured, distributed and/or sold by all defendants, Mr. Boudreaux inhaled benzene fumes and other harmful substances emitted by the normal use of the products, proximately causing multiple myeloma related to benzene exposure from which he suffers and for which these defendants are strictly liable under Louisiana law.

35.

The defective condition of the defendants' products proximately caused or substantially contributed to plaintiffs' injuries or damages as described elsewhere herein. The defendants are hence jointly and solidarily strictly liable for the damages caused by their fault.

**Former Article 2317 Liability**

36.

Mr. Boudreaux's AML leukemia was caused by an unreasonably defective thing that was within the defendants' care, custody or control, namely, benzene and benzene-containing products. Since Mr. Boudreaux suffered his benzene exposures while former Article 2317 of Louisiana Civil Code was still in effect, it governs here. It provided:

> "We are responsible, not only for the damages occasioned by our
> own act, but for that which is caused by the act of persons for

> whom we are answerable, or of the things which we have in our custody . . ."

In interpreting this Article, the Louisiana Supreme Court in *Loescher v. Parr*[3] determined that when harm results from a defect in a thing that creates an unreasonable risk of harm to others, the person legally responsible for the custody of that thing may be held liable for the resulting damages, even though no personal negligent act or inattention on the person's part is proved. This liability arises from the person's legal relationship to the thing that presents an unreasonable risk of harm to others.

37.

Under former Article 2317, a plaintiff must prove:

- The thing in question was defective, which means that it posed an unreasonable risk of harm;
- It was in the garde (i.e., care, custody or control) of the defendant, and
- The plaintiff was damaged as a result of the defect.

When Mr. Boudreaux was exposed to benzene or benzene-containing products at the defendants' facilities, the defendants had control because they provided the facilities where Mr. Boudreaux was exposed to benzene.

<b>Concealment, Misrepresentation, Fraud</b>

38.

The Defendants were aware of the dangerous condition presented by exposure to benzene, and that Mr. Boudreaux would suffer from diseases and other ill health effects as a result of these exposures. Defendants failed and/or willfully withheld knowledge of the health dangers from exposure to benzene. Under Louisiana law fraud may be either active or passive.

Passive fraud may arise from a defendant's silence or failure to act. To state a claim for passive fraud, Louisiana courts generally require a showing of the following elements: (1) the information that was withheld, (2) the general time period during which the fraudulent conduct occurred, (3) the relationship giving rise to the duty to speak, and (4) what the person or entity engaged in the fraudulent conduct gained by withholding then information. *See Chrysler Credit Corp. v. Whitney Nat'l Bank*, 824 F.Supp. 587, 598 (ED. La.1993). In support of their fraud claims against each of the defendants, the plaintiffs would respectfully show as follows:

> i. Mr. Boudreaux was not warned by any of the Defendant's that he was being exposed to dangerous levels of benzene fumes at any time between 1985 and 2003;
>
> ii. From 1985 through 2003 the Defendant's failed to warn Mr. Boudreaux that he was being exposed to dangerous level of benzene. Additionally, they failed to warn that these exposures could cause cancers, and blood diseases, and failed to provide adequate training and personal protective gear to minimize exposure.
>
> iii. The Defendant's had responsibilities to provide a safe work environment, including warning of hazardous substances, and taking measures to minimize or eliminate exposures to these hazardous substances at their facilities where he worked, had an obligation to prevent hazardous conditions and or warn of hazardous conditions.

### Damages Sustained by Mr. Boudreaux's' Wife and Children

39.

Due to the defendants' fault, as described above, and because of the benzene-related injuries of Mr. Boudreaux, the plaintiffs have suffered loss of consortium, loss of services, loss of affection, and loss of nurture and are entitled to damages as are reasonable.

---

[3] 324 So.2d 441, 447-48 (La. 1976).

**Compensatory Damages**

40.

As a result of the acts and omissions of the defendants, the plaintiffs are entitled to recover money damages, both past and future, for all elements of damages allowed by Louisiana law. These damages are, without limitation:

a) Past, present, and future physical pain and suffering;

b) Past, present, and future mental anguish and emotional distress;

c) Disfigurement and embarrassment;

d) Physical Impairment;

e) Past and future earnings;

f) Lost earning capacity;

g) Physical Impairment;

h) Physical and Mental Disabilities;

i) Past, present, and future medical care, convalescence, mental and physical therapy and all other health care expenses;

j) Loss of enjoyment of life;

k) Fear of cancer and other diseases;

l) Loss of society, consortium, companionship, services, nurture, and love and affection;

m) Wrongful death damages; and

n) Survival damages.

**Discovery Rule/Contra Non Valentum**

41.

The prescriptive period does not start until the plaintiffs knew or should have known that

Mr. Boudreaux's cancer was cause by benzene. Here, the result of the Mr. Boudreaux's exposure to benzene was inherently undiscoverable. The cancer took years to develop, and even when the symptoms did manifest, neither the physicians, Mr. Boudreaux, nor the plaintiffs detected the link between Mr. Boudreaux's benzene exposures and his malignancies. Neither Mr. Boudreaux nor the plaintiffs ever heard or saw anything that linked benzene to Mr. Boudreaux's cancer. This cancer was the product of exposure to benzene over a period of time rather than at a point in time. Hence, the prescription period did not start until Mrs. Boudreaux and plaintiffs learned about the cause of his AML leukemia. Mrs. Boudreaux filed a workers compensation suit within one year of his death which tolls prescription for any tort suit.

### Wrongful Death & Survival Claims

42.

Pursuant to Louisiana Civil Code articles 2315.1 and 2315.2, the plaintiffs bring a wrongful death and survival action in this case. The plaintiffs have lost the love, affection, solace, comfort, companionship, society, assistance necessary for a successful marriage, care, maintenance, support, services, advice, counsel, reasonable contributions of pecuniary value, and the present value of the assets that Mr. Boudreaux would in reasonable probability have added to the estate and left to the plaintiffs. The plaintiffs would also show that they have suffered mental anguish and will continue to suffer mental anguish.

43.

The plaintiffs would show that prior to Mr. Boudreaux's death, he sustained medical costs and expenses, pain and suffering, mental anguish, disability, loss of income, loss of earning capacity, loss of consortium, physical impairment, and disfigurement, as a result of the acts of

defendant complained of above. The survival claim is brought on behalf of the estate and heirs of Mr. Boudreaux, together with a claim for expenses of funeral and burial.

## Jury Trial

44.

The plaintiffs pray for trial by jury.

## Prayer

45.

For these reasons, the plaintiffs ask that Shell Oil Company, Shell Chemical LP d/b/a Shell Chemical Company, Formosa Plastics, Rubicon LLC, CF Industries, Exxon Mobil Corporation, The Dow Chemical Co. be cited to appear and answer, and that on final trial, the plaintiffs have:

a. Judgment against Shell Oil Company, Shell Chemical LP d/b/a Shell Chemical Company, Formosa Plastics, Rubicon LLC, CF Industries, Exxon Chemical Company, Dow Chemical for the actual and special damages suffered by the plaintiffs as a result of defendant's conduct;
b. Costs of suit;
c. Prejudgment and post-judgment interest at the highest rate provided by law; and
d. All other and further relief to which the plaintiffs may be entitled.

Respectfully Submitted:

*s/ Richard J. Fernandez*
Richard J. Fernandez (La. Bar No. 5532)
**Law Offices of Richard J. Fernandez, LLC**
3000 West Esplanade Avenue, Suite 200
Metairie, Louisiana 70002

Telephone: (504) 834-8500
Facsimile: (504) 834-1511
E-mail: rick@rjfernandez.com

/s/ *Lynn Eric Williams, Jr.*
Lynn Eric Williams, Jr. (La. Bar No. 26773)
**Williams Law Office, LLC**
433 Metairie Road, Suite 302
Metairie, LA 70005
Telephone: (504) 832-9898
Facsimile: (504) 832-9811
eric@amlbenzene.net

**Attorneys for Plaintiffs**